1  NOSSAMAN LLP
   Allan H. Ickowitz (SBN 80994)
2  Thomas D. Long (SBN 105987)
   Scott N. Yamaguchi (SBN 157472)
3  David Graeler (SBN 197836)
   445 South Figueroa Street, 31st Floor
4  Los Angeles, California 90071-1607
   Telephone: (213) 612-7800
5  Fax: (213) 612-7801
   aickowitz@nossaman.com
6  tlong@nossaman.com
   syamaguchi@nossaman.com
7  dgraeler@nossaman.com

8  Attorneys for Plaintiff IndyMac MBS, Inc.

9

10            UNITED STATES BANKRUPTCY COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  In re                          ) Case No.: 2:08-bk-21752-BB
                                    )
14  INDYMAC BANCORP, INC.,          ) Chapter 7
                                    )
15        Debtor.                   )
                                    )
16  INDYMAC MBS, INC., a Delaware   ) Adv. Proc. No.: 2:11-ap-01820-BB
    corporation,                    )
17                                  ) **FIRST AMENDED COMPLAINT**
          Plaintiff,                )
18                                  ) (Removal of State Court Action (LASC Case
       vs.                          ) No. BC 455772)
19                                  )
    ACE AMERICAN INS. CO., a Pennsylvania ) [Related to *In re IndyMac Bancorp, Inc.*, C.D.
20  corporation; ZURICH AMERICAN INS. CO., a ) Bankr. 08-bk-21752-BB and *Siegel v. Certain
    Delaware corporation; TWIN CITY FIRE INS. ) Underwriters at Lloyds of London, et al.*, Adv.
21  CO., a Delaware corporation; CONTINENTAL ) Proc. No. 2:11-ap-1443]
    CASUALTY CO., a Delaware corporation; XL )
22  SPECIALTY INS. CO., a Delaware           )
    corporation; ARCH INS. CO., a Delaware   )
23  corporation; AXIS INSURANCE CO., a       )
    Delaware corporation; CERTAIN            )
24  UNDERWRITERS AT LLOYDS OF                )
    LONDON, an unincorporated association;   )
25  FEDERAL INS. CO., a New Jersey           )
    corporation; NATIONAL UNION FIRE INS.    )
26  CO. OF PITTSBURGH PENNSYLVANIA, a        )
    Delaware corporation; LEXINGTON INS. CO.,)
27  a Delaware corporation; CATLIN INS. CO., )
    LTD., a United Kingdom corporation;      )
28  MICHAEL W. PERRY; A. SCOTT KEYS;         )
    LOUIS E. CALDERA; LYLE E. GRAMLEY;       )
    HUGH M. GRANT; PATRICK C. HADEN;         )

402739_3.DOC

TERRENCE G. HODEL; ROBERT L. HUNT )
II; LYDIA H. KENNARD; BRUCE G. )
WILLISON; JOHN OLINSKI; S. BLAIR )
ABERNATHY; RAPHAEL BOSTIC; SAMIR )
GROVER; SIMON HEYRICK; VICTOR H. )
WOODWORTH; LYNETTE ANTOSH; )
SCOTT VAN DELLEN; RICHARD KOON; )
KENNETH SHELLEM; WILLIAM ROTHMAN; )
JILL JACOBSEN; KEVIN CALLAN; and )
ALFRED H. SIEGEL, as Chapter 7 )
bankruptcy trustee of  INDYMAC BANCORP, )
INC. )
 )
                    Defendants.          )

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1    Plaintiff, IndyMac MBS, Inc. ("IndyMac MBS"), by and through its counsel of record

2    herein, alleges as follows:

3                    **INTRODUCTION AND NATURE OF THE ACTION**

4        1.    This is an insurance coverage action seeking declaratory relief pursuant to 28

5    U.S.C. §§ 2201 and 2202 and California Code of Civil Procedure Section 1060.  IndyMac MBS

6    seeks a determination of the parties' rights and obligations under a series of directors and

7    officers liability insurance policies (the "D&O Policies" as hereinafter defined) issued by the

8    "Insurance Carrier Defendants" (as hereinafter defined) and under which the "Individual

9    Insured Defendants" (as hereinafter defined)  and the "Trustee" (as hereinafter defined) have

10   sought coverage competing with coverage invoked by IndyMac MBS with respect to the

11   "Underlying Claims" (defined to include all claims in the section of this Complaint entitled "THE

12   UNDERLYING CLAIMS" at paragraphs 56 through 83, inclusive, below).  IndyMac MBS has

13   tendered the "MBS Litigation" (as hereinafter defined) and the "FHLB Litigations" (as

14   hereinafter defined) to the Insurance Carrier Defendants and has received no

15   acknowledgement of coverage.  The MBS Litigation and the FHLB Litigations implicate

16   coverage under "Side C" (as hereinafter defined) of the D&O Policies provided that the

17   plaintiffs in the MBS litigation and the FHLB Litigations are seeking recovery on account of acts

18   or omissions "relating to a transaction arising out of, involving, or relating to the purchase or

19   sale of any securities of the Company" within the meaning of the D&O Policies.

20       2.    An actual and justiciable controversy exists between IndyMac MBS and all of the

21   defendants relative to the coverage, or lack of coverage, provided by the D&O Policies for

22   which no other adequate remedy exists by which the rights of the parties may be determined.

23       3.    The Individual Insured Defendants and the Trustee have requested coverage

24   under the D&O Policies described below for some or all of the Underlying Claims.

25       4.    A dispute has arisen among IndyMac MBS and the defendants concerning

26   whether coverage is available for some or all of the Underlying Claims under the D&O Policies.

27       5.    IndyMac MBS is informed and believes, and on that ground alleges, that each of

28   the Insurance Carrier Defendants contends that any coverage available for the Underlying

402739_3.DOC

1  Claims is restricted to the 2007-2008 policy year (the "First Tower"). IndyMac MBS is further

2  informed and believes that, in contrast, the claimants, the Trustee, and a number of the

3  Individual Insured Defendants in the Underlying Claims contend that some of the Underlying

4  Claims are properly covered under the 2008-2009 policy year (the "Second Tower"). IndyMac

5  MBS is further informed and believes that the Insurance Carrier Defendants contend that some

6  of the Underlying Claims are not covered under either the First Tower or the Second Tower.

7       6.     The coverage afforded by the D&O Policies to IndyMac MBS is subject to

8  "priority of payment" provisions. IndyMac MBS contends that any coverage for the Underlying

9  Claims in which IndyMac MBS is a defendant, the "MBS Litigation," the "FHLB Chicago

10  Litigation" (as hereinafter defined), and the "FHLB Indianapolis Litigation" (as hereinafter

11  defined) is available in the First Tower. IndyMac MBS, as set forth below, seeks an

12  adjudication of which of the Underlying Claims are covered by the D&O Policies, and with

13  respect to those Underlying Claims that are covered, which are properly assigned to the First

14  Tower and Second Tower in order to be able to ascertain its rights as an insured under the

15  D&O Policies with respect to the Underlying Claims in which it is a defendant as alleged below.

16                          **JURISDICTION AND VENUE**

17       7.     This Court has personal jurisdiction over all of the defendants. The Individual

18  Insured Defendants have maintained residence, domicile, and/or presence in California at all

19  times relevant as alleged in this complaint. The Insurance Carrier Defendants have done

20  business in the State of California and have issued policies covering IndyMac Bank, F.S.B.

21  and its subsidiaries (including plaintiff IndyMac MBS) which were headquartered in California.

22  Defendant Alfred H. Siegel ("Trustee") is the Chapter 7 bankruptcy trustee of the Debtor

23  herein, IndyMac Bancorp Inc., which had its principal place of business in Pasadena, California

24  in Los Angeles County.

25       8.     Plaintiff IndyMac MBS initially commenced this action in the Los Angeles County

26  Superior Court on February 23, 2011, which was after the commencement of the above

27  captioned Chapter 7 bankruptcy case. On March 16, 2011, Defendant Michael W. Perry filed a

28  Notice of Removal under 28 U.S.C. §§ 1334(b), 1441, 1446, 1452, C.D. Cal. General Order

402739_3.DOC

266, Fed. R. Bankr. P. 9027, and Local Bankruptcy Rule 9027-1.  Upon removal, this removed

state court action was designated Adversary Proceeding No. 11-ap-01820-BB and assigned to

this Court where the Chapter 7 bankruptcy case, denominated as Case No. 2:08-bk-21752-BB

("Bankruptcy Case") is pending

   9. On March 17, 2011, Defendants S. Blair Abernathy, Lynette Antosh, Raphael

Bostic, Louis E. Caldera, Kevin Callan, Hugh M. Grant, Lydia H. Kennard, A. Scott Keys,

Richard Koon, John Olinski, William Rothman, Kenneth Shellem, Scott Van Dellen, Bruce G.

Willison, and Victor H. Woodworth joined Defendant Michael W. Perry's removal of the state

court action. [Adv. Dkt. No. 6.]

   10. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§

1334 and 1452.  This adversary proceeding is non-core; it is related to the Bankruptcy Case

and the adversary proceeding commenced by the Trustee therein denominated as Siegel v.

Certain Underwriters at Lloyds of London, et al., Adv. Proc. No. 2:11-ap-1442.  Plaintiff

IndyMac MBS further states that Plaintiff consents to the entry of final orders or judgment by

the bankruptcy judge herein.

   11. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1409.

   12. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201

and 2202.

### PARTIES

   13. Plaintiff IndyMac MBS is a Delaware corporation with its principal place of

business at all times relevant herein in Pasadena, California.  During the relevant policy period,

IndyMac MBS was a wholly-owned subsidiary of IndyMac Bank, F.S.B. ("the Bank") a failed

bank previously headquartered in Pasadena, California and presently under receivership of the

Federal Deposit Insurance Corporation in its receivership capacity ("FDIC-R").  Prior to being

placed into receivership with FDIC-R, the Bank was a wholly-owned subsidiary of IndyMac

Bancorp., Inc. ("Bancorp").  (On July 31, 2008, Bancorp filed a petition for reorganization under

Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central

District of California, which proceeding remains pending.)  On July 11, 2008, the Office of Thrift

402739_3.DOC

1  Supervision, ("OTS") closed the Bank and appointed FDIC-R as its receiver. On the same

2  day, OTS chartered IndyMac Federal, F.S.B. ("IndyMac Federal") as an interim depository

3  institution and appointed FDIC as its conservator, and the ownership of IndyMac MBS was

4  transferred to IndyMac Federal. On March 19, 2009, OTS closed IndyMac Federal and placed

5  it into receivership with FDIC-R. Accordingly, IndyMac MBS is now wholly-owned by the

6  IndyMac Federal receivership estate.

7         14.    Defendant Ace American Insurance Company ("ACE") is a Pennsylvania

8  corporation with its principal place of business in Philadelphia, Pennsylvania.

9         15.    Defendant Zurich American Insurance Company ("Zurich") is a Delaware

10  corporation with its principal place of business in Schaumburg, Illinois.

11         16.    Defendant Twin City Fire Insurance Co. is a Delaware corporation with its

12  principal place of business in Hartford, Connecticut.

13         17.    Defendant Continental Casualty Company ("Continental") is a Delaware

14  corporation with its principal place of business in Chicago, Illinois.

15         18.    Defendant XL Specialty Insurance Company ("XL") is a Delaware corporation

16  headquartered in Stanford, Connecticut.

17         19.    Defendant Arch Insurance Company ("Arch") is a Delaware corporation with its

18  principal place of business in New York, New York.

19         20.    Defendant Axis Insurance Company ("Axis") is a Delaware corporation with its

20  principal place of business in Alpharetta, Georgia.

21         21.    Defendant Certain Underwriters at Lloyds of London ("Lloyds") is an

22  unincorporated association with its principal place of business in London, England.

23         22.    Defendant Federal Insurance Company ("Federal") is a New Jersey corporation

24  with its principal place of business in Warren, New Jersey.

25         23.    Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania

26  ("National Union") is a Delaware corporation with its principal place of business in New York,

27  New York.

28

1    24.    Defendant Lexington Insurance Company ("Lexington") is a Delaware

2  corporation with its principal place of business in Boston, MA.  Lexington subscribed to the

3  Lloyds Policy.

4    25.    Defendant Catlin Ins. Co., Ltd. ("Catlin") is a United Kingdom corporation with its

5  principal place of business in London, England.  Catlin subscribed to the Lloyds Renewal

6  Policy.

7    26.    Defendants Ace, Zurich, Twin City, Continental, XL, Arch, Axis, Lloyds, Federal,

8  National Union, Lexington and Catlin are collectively referred to as the "Insurance Carrier

9  Defendants."  The Insurance Carrier Defendants each issued and/or subscribed to one or

10  more of the D&O Insurance Policies identified in paragraphs 51 through 55 below, under which

11  Bancorp, the Bank, IndyMac MBS, and the Individual Insured Defendants (as hereinafter

12  defined) are insureds.  Each of the Insurance Carrier Defendants is authorized to do business

13  and is doing business in the State of California.

14    27.    Defendant Michael W. Perry was at all times relevant to the Underlying Claims

15  the Chief Executive Officer ("CEO") and Chairman of the Board of the Bank as well as of the

16  Bank's holding company Bancorp, which both had their principal place of business at 888 E.

17  Walnut Street, Pasadena, California 91106.  Plaintiff is informed and believes that defendant

18  Perry is a resident of Los Angeles County.

19    28.    Defendant A. Scott Keys was at all times relevant to the Underlying Claims the

20  Chief Financial Officer ("CFO") of the Bank.  Plaintiff is informed and believes that defendant

21  Keys is a resident of Los Angeles County.

22    29.    Defendant Louis E. Caldera was at times relevant to the Underlying Claims a

23  director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Caldera is

24  a resident of the State of New Mexico.

25    30.    Defendant Hugh M. Grant was at times relevant to the Underlying Claims a

26  director of the Bank and Bancorp. Plaintiff is informed and believes that defendant Grant is a

27  resident of the State of California.

28

402739_3.DOC

31.    Defendant Patrick C. Haden was at times relevant to the Underlying Claims a director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Haden is a resident of Los Angeles County.

32.    Defendant Terrence G. Hodel was at times relevant to the Underlying Claims a director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Hodel is a resident of the State of California.

33.    Defendant Robert L. Hunt was at times relevant to the Underlying Claims a director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Hunt is a resident of the State of California.

34.    Defendant Lydia H. Kennard was at times relevant to the Underlying Claims a director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Kennard is a resident of the State of California.

35.    Defendant Bruce G. Willison was at times relevant to the Underlying Claims a director of the Bank and Bancorp.  Plaintiff is informed and believes that defendant Willison is a resident of Los Angeles County.

36.    Defendant John Olinski was at times relevant to the Underlying Claims the CEO and Chairman of the Board of IndyMac MBS and held other positions with the Bank from time to time.  Plaintiff is informed and believes that defendant Olinski is a resident of Los Angeles County.

37.    Defendant S. Blair Abernathy was at times relevant to the Underlying Claims the CFO of the Bank, the CEO and Chairman of the Board of IndyMac ABS, Inc. (a wholly owned subsidiary of the Bank) and a director of IndyMac MBS.  Plaintiff is informed and believes that defendant Abernathy is a resident of Los Angeles County.

38.    Defendant Raphael Bostic was at times relevant to the Underlying Claims a director of IndyMac MBS.  Plaintiff is informed and believes that defendant Bostic is a resident of Los Angeles County.

39.    Defendant Samir Grover was at times relevant to the Underlying Claims the CFO of IndyMac MBS and IndyMac ABS.  Plaintiff is informed and believes that defendant Grover is

1   a resident of the State of California.

2       40.    Defendant Simon Heyrick was at times relevant to the Underlying Claims the

3   CFO of IndyMac MBS.  Plaintiff is informed and believes that defendant Heyrick is a resident of

4   Los Angeles County.

5       41.    Defendant Victor H. Woodworth was at times relevant to the Underlying Claims

6   Vice President and Assistant Secretary of IndyMac MBS and Assistant Secretary of IndyMac

7   ABS.  Plaintiff is informed and believes that defendant Woodworth is a resident of the State of

8   California.

9       42.    Defendant Lynette Antosh was at times relevant to the Underlying Claims a

10  director of IndyMac MBS and IndyMac ABS.  Plaintiff is informed and believes that defendant

11  Antosh is a resident of the State of California.

12      43.    Defendant Scott Van Dellen was at times relevant to the Underlying Claims the

13  President and CEO and/or the interim Chief Credit Officer ("CCO") of the Bank's Home Builder

14  Division ("HBD").  Plaintiff is informed and believes that defendant Van Dellen is a resident of

15  Los Angeles County.

16      44.    Defendant Richard Koon was at times relevant to the Underlying Claims the

17  Chief Lending Officer ("CLO") of the Bank's HBD.  Plaintiff is informed and believes that

18  defendant Koon is a resident of the State of California.

19      45.    Defendant Kenneth Shellem was at times relevant to the Underlying Claims the

20  CCO of the Bank's HBD.  Plaintiff is informed and believes that defendant Shellem is a

21  resident of Los Angeles County.

22      46.    Defendant William Rothman was at times relevant to the Underlying Claims the

23  regional manager and/or the CLO of the Bank's HBD.  Plaintiff is informed and believes that

24  defendant Rothman is a resident of the State of California.

25      47.    Defendant Jill Jacobsen was at times relevant to the Underlying Claims a vice

26  president of the Bank and IndyMac ABS.  Plaintiff is informed and believes that defendant

27  Jacobsen is a resident of the State of California.

28      48.    Defendant Kevin Callan was at times relevant to the Underlying Claims the CEO

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1  of IndyMac Securities.  Plaintiff is informed and believes that defendant Callan is a resident of

2  the State of California.

3  49.  Defendants Michael W. Perry, A. Scott Keys, Louis E. Caldera, Lyle E. Gramley,

4  Hugh M. Grant, Patrick C. Haden, Terrence G. Hodel, Robert L. Hunt II, Lydia H. Kennard,

5  Bruce G. Willison, John Olinski, S. Blair Abernathy, Raphael Bostic, Samir Grover, Simon

6  Heyrick, Victor H. Woodworth, Lynette Antosh, Scott Van Dellen, Richard Koon, Kenneth

7  Shellem, William Rothman, Jill Jacobsen and Kevin Callan are collectively referred to as the

8  "Individual Insured Defendants."

9  50.  Defendant Trustee is sued herein in that capacity.  Certain of the Individual

10  Defendants have filed proofs of claim in the Bankruptcy Case on account of the Underlying

11  Claims, including the following:  Michael E. Perry; Louis E. Caldera; Hugh M. Grant; Terrance

12  G. Hodel; Robert L. Hunt II; Lydia H. Kennard; Lyle E. Gramley; Patrick C. Haden; and Bruce

13  G. Willison asserting, among other things, claims for indemnification against Bancorp.

## THE D&O INSURANCE POLICIES

15  51.  The insurance policies referenced in this section of the complaint, paragraphs 51

16  through 55 inclusive, are collectively referred to as the "D&O Policies."  The policies consist of

17  a total of $160 million in face amount of insurance coverage spread among 16 policies—eight

18  in the 2007-2008 policy year running from March 1, 2007 to March 1, 2008 and eight in the

19  2008-2009 policy year running from March 1, 2008 through April 1, 2009.  These two policy

20  years are referred to, respectively, as the "First Tower" for the policy year 2007-2008, and the

21  "Second Tower" for the policy 2008-2009.  The insurance coverage in the First Tower and

22  Second Tower each consists of eight policies of face limits of $10 million each providing

23  coverage as described below.

### First Tower (2007-2008 Policy Year)

25  52.  Bancorp or the Bank incurred premiums of over $1,777,920 to procure the D&O

26  Policies in the First Tower.  The First Tower consists of the following coverage:

27  a.  Lloyds Policy No. 509QA006807 together with a co-insuring policy bearing the

28  same number issued by defendants Lloyds and Lexington with subscription shares of 75% and

402739_3.DOC

1  25% respectively (collectively the "Lloyds Policy") provide $10 million of coverage.  Lloyds

2  coverage is subscribed 50% by syndicate No. 2987 and 25% by syndicate No. 4000.  This

3  policy is the primary policy for the First Tower, and the ensuing three excess policies

4  referenced in subparagraphs b, c, and d, below, generally follow the terms of the Lloyds Policy.

5  The Lloyds Policy and the policies which follow it provide three types of coverage:

6          (1)    Coverage for losses resulting from claims made against directors and

7  officers of Bancorp, the Bank, and their subsidiaries during the policy period for "an individual

8  act," also known as "Side A" coverage;

9          (2)    Coverage for losses sustained by Bancorp, the Bank, and their

10  subsidiaries as a result of indemnifying officers and directors for losses, also known as "Side

11  B" coverage; and

12         (3)    Coverage for losses sustained by Bancorp, the Bank, and their

13  subsidiaries as a result of acts or omissions by Bancorp, the Bank or their subsidiaries

14  involving a Securities Law Violation as defined in the D&O Policies, also known as "Side C"

15  coverage.

16        A true and correct copy of the Lloyds' Policy is attached hereto as **Exhibit A**.

17        b.     Zurich Policy No. DOC9035134-00 (the "Zurich Policy") is the first layer excess

18  policy in the First Tower and provides an additional $10 million of coverage beyond the

19  coverage of the Lloyds Policy.  A true and correct copy of the Zurich Policy is attached hereto

20  as **Exhibit B**.

21        c.     Federal Policy No. 8208-0386 (the "Federal Policy") is the second layer excess

22  policy in the First Tower and provides an additional $10 million of coverage beyond the

23  coverage of the Zurich Policy.  A true and correct copy of the Federal Policy is attached hereto

24  as **Exhibit C**.

25        d.     National Union Policy No. 966-82-76 (the "National Union Policy") is the third

26  layer excess policy in the First Tower and provides an additional $10 million of coverage

27  beyond the coverage of the Federal Policy.  A true and correct copy of the National Union

28  Policy is attached hereto as **Exhibit D**.

402739_3.DOC

e.    XL Policy No. ELU096700-07 (the "XL Policy") is the fourth layer excess policy in the First Tower and provides an additional $10 million of coverage beyond the limits of the National Union Policy, but it provides "Side A" coverage only. A true and correct copy of the XL Policy is attached hereto as **Exhibit E**. The fifth, sixth, and seventh excess policies referenced in subparagraphs f, g, and h, below, generally follow the terms of the XL Policy.

f.    Arch Policy No. ABX0020231-00 (the "Arch Policy") is the fifth layer excess policy in the First Tower and provides an additional $10 million coverage beyond the coverage of the XL Policy. A true and correct copy of the Arch Policy is attached hereto as **Exhibit F**.

g.    Ace Policy No. DOX G21681647 002 (the "Ace Policy") is the sixth layer excess policy in the First Tower and provides an additional $10 million of coverage beyond the coverage of the Arch Policy. A true and correct copy of the Ace Policy is attached hereto as **Exhibit G**.

h.    Axis Policy No. RNN712064/01/2007 (the "Axis Policy") is the seventh layer excess policy in the First Tower and provides an additional $10 million of coverage beyond the Ace Policy. A true and correct copy of the Axis policy is attached hereto as **Exhibit H**.

### Second Tower (2008-2009 Policy Year)

53.    Prior to the expiration of the First Tower policies identified above, Bancorp or the Bank purchased replacement and renewal policies that also provide a total of $80 million in coverage spread over eight policies covering the policy period March 1, 2008 through April 1, 2009. These policies collectively are referred to as the "Second Tower." In exchange for the coverage in the Second Tower, Bancorp or the Bank paid over $6 million in premiums – reflecting an increase of over 300% or in excess of $4 million over the premiums charged for the First Tower.

a.    Lloyds Policy No. 509/AQ011608, a true and correct copy of which is attached hereto as **Exhibit I** (the "Lloyds Renewal Policy"), provides $10 million of coverage in the Second Tower. The Lloyds Renewal Policy is subscribed 50% by syndicate No. 2987, 25% by syndicate No. 4000 and 25% by Catlin. This policy is the primary policy, and the ensuing three

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1  excess policies, referenced in subparagraphs b, c, and d, below, generally follow the terms of

2  the Lloyds Renewal Policy and provide three types of coverage:

3           (1)      coverage for losses resulting from claims made against directors and

4  officers of Bancorp, the Bank, and their subsidiaries during the policy period for "an individual

5  act," also known as "Side A" coverage;

6           (2)      coverage for losses sustained by Bancorp, the Bank, and their

7  subsidiaries as a result of indemnifying officers and directors for losses, also known as "Side

8  B" coverage; and

9           (3)      coverage for losses sustained by Bancorp, the Bank, and their

10  subsidiaries as a result of acts or omissions by Bancorp, the Bank, or their subsidiaries

11  involving a Securities Law Violation as defined in the D&O Policies, also known as "Side C"

12  coverage.

13       b.      Zurich Policy No. DOC-9035134-01 (the "Zurich Renewal Policy") is the first layer

14  excess policy and provides an additional $10 million of coverage beyond the coverage of the

15  Lloyds Renewal Policy in the Second Tower.  A true and correct copy of the Zurich Renewal

16  Policy is attached hereto as **Exhibit J**.

17       c.      Twin City Policy No. 00 DA 248886-08 (the "Twin City Replacement Policy") is

18  the second layer excess policy and provides an additional $10 million of coverage beyond the

19  coverage of the Zurich Renewal Policy in the Second Tower.  A true and correct copy of the

20  Twin City Replacement Policy is attached hereto as **Exhibit K**.

21       d.      Continental Policy No. DOX 287221440 (the "Continental Replacement Policy")

22  is the third layer excess policy and provides an additional $10 million of coverage beyond the

23  coverage of the Twin City Replacement Policy in the Second Tower.  A true and correct copy

24  of the Continental Replacement Policy is attached hereto as **Exhibit L.**

25       e.      XL Policy No. ELU 103295-08 (the "XL Renewal Policy") is the fourth layer

26  excess and provides an additional $10 million of coverage beyond the coverage of the

27  Continental Replacement Policy, and provides "Side A" coverage only in the Second Tower.  A

28  true and correct copy of the XL Renewal Policy is attached hereto as **Exhibit M**.  The fifth,

402739_3.DOC

1  sixth and seventh excess policies referenced in subparagraphs f, g, and h, below, generally

2  follow the terms of the XL Renewal Policy.

3          f.      Arch Policy No. ABX 0020231-01 ("Arch Renewal Policy") is the fifth layer excess

4  policy and provides an additional $10 million limit of coverage beyond the coverage of the XL

5  Renewal Policy.  A true and correct copy of the Arch Renewal Policy is attached hereto as

6  **Exhibit N**.

7          g.      ACE Policy No. DOX G21681647 003 (the "ACE Renewal Policy") is the sixth

8  layer excess policy and provides an additional $10 million coverage beyond the coverage of

9  the Arch Renewal Policy.  A true and correct copy of the ACE Renewal Policy is attached

10  hereto **Exhibit O**.

11          h.      Axis Policy No. MNN 7120641/01/2008 (the "Axis Renewal Policy") is the

12  seventh layer excess policy and provides an additional $10 million coverage beyond the

13  coverage of the Ace Renewal Policy in the Second Tower.  A true and correct copy of the

14  binder issued by Axis and a letter dated October 27, 2008 from Axis' attorney acknowledging

15  the issuance of the Axis Renewal Policy are attached hereto as **Exhibit P**.

16          54.     The policies in the First Tower and Second Tower are collectively known as the

17  "D&O Policies."  The D&O Policies are "self-consuming," "wasting" or "depleting" in the sense

18  that the attorneys' fees and costs constituting reasonable defense costs for "Claims" covered

19  by the D&O Policies reduce the limits of those policies otherwise available to pay covered

20  "Claims."  All coverage under the D&O Policies, including Side A, Side B, and Side C coverage

21  share the same limit within each policy, each of which has an aggregate total limit of $10

22  million.

23          55.     Each of the excess insurance policies in the First Tower and the Second Tower,

24  respectively, is contractually dependent upon each of the policies in the layers of insurance

25  underneath it, including the primary policy, i.e., the Lloyds Policy in the First Tower and the

26  Lloyds Renewal Policy in the Second Tower, respectively.  Subject to the terms thereof, each

27  excess policy provides insurance to cover losses only after the insurance in the underlying

28

402739_3.DOC

1  layers has been exhausted as a result of payments being made on account of covered losses

2  or if the insurance in the underlying layers is unavailable for specified reasons.

3  ### THE UNDERLYING CLAIMS

4      56.    A total of twelve separate claims have been asserted against the D&O Policies.

5  These claims are alleged in paragraphs 57 through 83, inclusive below, and are collectively

6  referred to as the "Underlying Claims."

7  ### The Tripp Litigation

8      57.    On March 12, 2007, plaintiff Claude A. Reese filed a securities class action

9  against Bancorp and defendant Perry in the United States District Court for the Central District

10  of California styled *Reese v. IndyMac Bancorp, et al.*, Case No. 07-cv-01653-GW-VBK (the

11  "Tripp Litigation"). A true and correct copy of the operative complaint in the Tripp Litigation is

12  attached hereto as **Exhibit Q**.

13      58.    The Insurance Carrier Defendants received notice of the Tripp Litigation during

14  the 2007-2008 policy year—the policy period of the First Tower—and one or more of the

15  insurers accepted the Tripp Litigation as a claim under the First Tower.

16      59.    In the operative complaint in the Tripp Litigation, the Tripp plaintiffs allege losses

17  to certain purchasers of Bancorp stock arising out of alleged misrepresentations by Bancorp

18  and defendant Perry.

19      60.    Other than the Tripp Litigation, none of the Underlying Claims was first asserted

20  and noticed to the Insurance Carrier Defendants during the 2007-2008 policy year.

21  ### The Daniels Litigation

22      61.    In 2008, the following securities class action lawsuits were filed in the United

23  States District Court for the Central District of California against Bancorp, defendant Perry,

24  defendant Keys, and Ernst & Young, LLP:

25      *Folsom v. IndyMac Bancorp, et al.*, Case No. 08-cv-3812 (filed June 11, 2008);

26      *Ariel Investments v. IndyMac Bancorp, Inc., et al.*, Case No. 08-cv-4302 (filed June 30,

27  2008);

28      *Yukelson v. Perry, et al.*, Case No. 08-cv-04591 (filed July 14, 2008);

402739_3.DOC

1   *Mazal v. IndyMac Bancorp, Inc., et al.*, Case No. 08-cv-4923 (filed July 28, 2008); and

2   *Daniels v. Perry, et al.*, Case No. 08-cv-5073 (filed August 1, 2008).

3   In August 2008, all five of these actions were transferred to the judge presiding over the Tripp

4   Litigation.  On September 12, 2008, the Court consolidated the five actions into a single action

5   under Case No. 08-cv-03812 (the "Daniels Litigation") and appointed Robert C. Daniels as the

6   lead plaintiff.  A true and correct copy of the operative complaint in the Daniels Litigation is

7   attached hereto as **Exhibit R**.

8       62.    The Daniels Litigation plaintiffs allege losses to certain purchasers of Bancorp

9   stock arising out of alleged misrepresentations by defendant Perry, defendant Keys, and

10  others.

## The FDIC-R Residential Lending Claim

12      63.    On March 27, 2009, counsel for FDIC-R sent a letter to defendants Perry, Keys,

13  Abernathy and others stating that it was making a "demand for payment of civil damages . . ."

14  (the "FDIC-R Residential Lending Claim").  A true and correct copy of this letter is attached

15  hereto as **Exhibit S**.

## The FDIC-R Homebuilder Lending Claim

17      64.    On March 27, 2009, counsel for the FDIC-R sent a letter to defendants Shellem,

18  Van Dellen, and Koon stating that it was making a "demand for payment of civil damages. . ."

19  arising out of their involvement with home builder lending at HBD.  A true and correct copy of

20  that letter is attached hereto as **Exhibit T**.

21      65.    On July 2, 2010, the FDIC-R filed a complaint against defendants Shellem, Van

22  Dellen, Rothman, and Koon in the United States District Court for the Central District of

23  California in an action styled *FDIC v. Van Dellen, et al.*, Case No. 2:10-cv-04915-DSF (SHx)

24  (the "Van Dellen Litigation").  A true and correct copy of the operative complaint in the Van

25  Dellen Litigation is attached hereto as **Exhibit U**.

## Bancorp's Bankruptcy Trustee's Claim

27      66.    On May 28, 2009, after the expiration of the 2008-09 ACE Policy, the Defendant

28  Trustee sent a letter to ACE in which the Trustee stated that the estate "plans to pursue claims

402739_3.DOC

1  against the Officers and Directors of Bancorp" (the "Trustee Letter"). A true and correct copy

2  of the Trustee Letter is attached hereto as **Exhibit V**.

3         67.    Enclosed with the Trustee Letter were letters from the Trustee to Defendant

4  Perry, et al., also dated May 28, 2009, stating that the Trustee "intends to pursue a legal

5  action" with respect to, among other things, alleged breaches of fiduciary duties by Bancorp

6  directors and officers.

7         68.    On November 13, 2009, the Trustee commenced an Adversary Proceeding

8  against defendants Caldera, Gramley, Grant, Haden, Hodel, Hunt, Kennard, Willison, and

9  Perry styled *Siegel v. Caldera, et al.*, Case No. 2:09-ap-2645-BB (C.D. Cal. Bankr.) (the

10 "Trustee Litigation"). A true and correct copy of the operative complaint in the Trustee

11 Litigation is attached hereto as **Exhibit W**.

12                                    **The MBS Litigation**

13        69.    On January 20, 2009, IBEW Local 103 filed a class action complaint in California

14 State Superior Court, Los Angeles County against defendants Abernathy, Olinski, Grover,

15 Heyrick, Woodworth, Antosh, and Bostic, among others, styled *IBEW Local 103 v. IndyMac*

16 *MBS, Inc., et al.*, Case No. BC 405843 (the "IBEW Litigation"). A true and correct copy of the

17 original complaint filed in the IBEW Litigation is attached hereto as **Exhibit X**.

18        70.    The IBEW Litigation was subsequently removed to the United States District

19 Court for the Central District of California, Case No. 09-cv-01520.

20        71.    The IBEW Litigation was voluntarily dismissed on May 21, 2009.

21        72.    Two similar class actions styled *Police & Fire Retirement System of Detroit v.*

22 *IndyMac MBS, Inc., et al.*, Case No. 09-cv-4583 (the "Detroit Action"), and *Wyoming State*

23 *Treasurer, et al., v. Olinski, et al.*, Case No. 09-cv-5933 (the "Wyoming Action"), were filed by

24 purchasers of mortgage-backed securities ("MBS") sponsored by the Bank in the United States

25 District Court for the Southern District of New York on May 14 and June 29, 2009, respectively.

26        73.    The Detroit and Wyoming actions were subsequently consolidated into a single

27 action styled *In re IndyMac Mortgage-Backed Securities Litigation*, Case No. 09-cv-4583

28 (S.D.N.Y.) A true and correct copy of the operative complaint in the consolidated action is

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1 | attached hereto as **Exhibit Y**.  (The actions referred to in paragraphs 65 through 69, inclusive

2 | above, shall collectively be referred to as the "MBS Litigation".)  The consolidated and

3 | amended class action complaint asserts claims under Sections 11, 12(a)(2) and 15 of the

4 | Securities Act of 1933.  Plaintiffs name IndyMac MBS, Perry, Olinski, Abernathy, Antosh,

5 | Bostic, Grover, Heyrick, and Woodworth as defendants in the MBS Litigation.

6 | <u>**The MBIA Litigation**</u>

7 | 74.    On September 22, 2009, MBIA Insurance Corporation ("MBIA") filed an action

8 | against defendants Perry, Keys, Jacobson, and Callan, among others, styled *MBIA Insurance*

9 | *Corp. v. IndyMac ABS, Inc., et al.*, Case No. BC422358, in California Superior Court, Los

10 | Angeles County (the "MBIA Litigation").  A true and correct copy of the complaint filed by MBIA

11 | is attached hereto as **Exhibit Z**.

12 | 75.    The MBIA Litigation arises out of alleged misrepresentations and omissions in

13 | connection with certain residential mortgage-backed securities notes ("RMBS Notes")

14 | sponsored by the Bank, for which MBIA provided "financial guaranty insurance in the form of

15 | guarantees of the trust obligations to make principal and interest payments on the RMBS

16 | Notes."

17 | <u>**The Assured Guaranty Litigation**</u>

18 | 76.    On September 17, 2010, Assured Guaranty Municipal Corp. ("Assured

19 | Guaranty") filed a complaint against defendants Perry, Keys, Jacobson, and Callan, among

20 | others, styled *Assured Guaranty Municipal Corp. v. UBS Securities LLC, et al.*, Case No. BC

21 | 445785, in California Superior Court, Los Angeles County (the "Assured Guaranty Litigation").

22 | A true and correct copy of the complaint filed by Assured Guaranty is attached hereto as

23 | **Exhibit AA**.

24 | 77.    Assured Guaranty alleges that defendants made misrepresentations and

25 | omissions in connection with certain RMBS Notes sponsored by the Bank, for which Assured

26 | Guaranty provided "financial guaranty insurance in the form of guarantees of the trust

27 | obligations to make certain principal and interest payments on certain of the mortgage-backed

28 | securities. . . ."

402739_3.DOC

### The Federal Home Loan Bank of Chicago Litigation

78.    On October 15, 2010, Federal Home Loan Bank of Chicago ("FHLB Chicago") filed a complaint in Illinois Chancery Court, Cook County against IndyMac MBS, numerous other depositors and issuers of mortgage-backed securities sponsored by financial institutions other than the Bank, numerous underwriters, and unnamed individuals, among others, styled *Federal Home Loan Bank of Chicago v. Banc of America Funding Corporation,* Case No. 10CH45003 (the "FHLB Chicago Litigation").  The complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and state law.  A true and correct copy of the original complaint filed in the FHLB Chicago Litigation is attached hereto as **Exhibit BB**.

### The Federal Home Loan Bank of Indianapolis Litigation

79.    On October 15, 2010, Federal Home Loan Bank of Indianapolis ("FHLB Indianapolis") filed a complaint in Indiana State Superior Court, Marion County against IndyMac MBS, numerous other depositors and issuers of mortgage-backed securities sponsored by financial institutions other than the Bank, numerous underwriters, and unnamed individuals, among others, styled *Federal Home Loan Bank of Indianapolis v. Banc of America Mortgage Securities, Inc.,* Case No. 49D05 10 10 PL 045071 (the "FHLB Indianapolis Litigation" and together with the FHLB Chicago Litigation, ("FHLB Litigations").  The complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and state law. A true and correct copy of the original complaint filed in the FHLB Indianapolis Litigation is attached hereto as **Exhibit CC**.

### The Securities and Exchange Commission Litigation Against Defendant Abernathy

80.    On February 11, 2011, the Securities and Exchange Commission ("SEC") filed a complaint against defendant Abernathy in the United States District Court for the Central District of California in an action styled *Securities and Exchange Commission v. S. Blair Abernathy.,* Case No. CV11-01308-JFW (SST) (the "SEC Abernathy Litigation").  A true and correct copy of the operative complaint in the SEC Abernathy Litigation is attached hereto as **Exhibit DD**.

81.    The SEC alleges securities law violations by defendant Abernathy in connection

402739_3.DOC

1  with (a) false and misleading statements in the offer and sale of the Bank's residential

2  mortgage-backed securities in 2007; and (b) false and misleading statements regarding

3  Bancorp's and the Bank's deteriorating financial condition in 2008 stock stales.

### The SEC Litigation Against Defendants Perry and Keys

5        82.    On February 11, 2011, SEC filed a complaint against defendants Perry and Keys

6  in the United States District Court for the Central District of California in an action styled

7  *Securities and Exchange Commission v. Michael W. Perry and A. Scott Keys.*, Case No.

8  CV11-01309-GHK (JCx) (the "SEC Perry Litigation"). A true and correct copy of the operative

9  complaint in the SEC Perry Litigation is attached hereto as **Exhibit EE**.

10        83.    The SEC alleges securities offering fraud and reporting violations by defendants

11  Perry and Keys.

### THE INSURANCE COVERAGE DISPUTE

13        84.    There are several important passages from the D&O Policies that affect the

14  analysis of insurance coverage for all of the Underlying Claims addressed in this action. The

15  language quoted below applies to the D&O Policies for both the First Tower and Second

16  Tower. The relevant passages from the Lloyd's Policies are as follows:

17      (1)    **Section II DEFINITIONS, Paragraph L**

18  **"Interrelated Wrongful Acts"** means **Wrongful Acts** which have as a common
nexus any fact, circumstance, situation, event, transaction or series of facts,
19  circumstances, situations, events or transactions.

20      (2)    **SECTION IV LIMIT OF LIABILITY**. . . , Paragraph C

21  C. More than one **Claim** involving the same **Wrongful Act** or **Interrelated
Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be
22  deemed to have been made at the earliest of the following times:

23        1. the time at which the earliest **Claim** involving the same **Wrongful Act**
or **Interrelated Wrongful Acts** is first made; or

24        2. the time at which the **Claim** involving the same **Wrongful Act** or
**Interrelated Wrongful Acts** shall be deemed to have been made pursuant to
25  Clause VI.B.

26      (3)    **SECTION VI NOTIFICATION**, Paragraph B

27  B. If during the **Policy Period** . . . the **Assureds** first become aware of
circumstances that might give rise to a **Claim**, and if the **Assureds** during the
28  **Policy Period** . . . give written notice to Underwriters of:

       1.     the specific circumstances in the anticipated **Wrongful Act** allegations;

       2.     the consequences which have resulted or may result therefrom; and

       3.     the circumstances by which the **Assureds** first became aware of thereof,

then any **Claim** made subsequently arising out of such circumstances or **Wrongful Act** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

A notice of such circumstance must describe as precisely as possible all facts and details including the reasons for anticipating a **Claim** with full particulars as to dates and persons involved and an estimate of quantum.

The D&O Policies in only the Second Tower contain the following language which has come to be known as "The Tripp Exclusion:

### SPECIFIC LITIGATION EXCLUSION AND INTERRELATED WRONGFUL ACTS ENDORSEMENT

It is hereby understood and agreed as follows:

A.  That Clause **III. EXCLUSIONS** is amended by the addition of the following:

    Based upon, arising out of, or directly or indirectly resulting from or in consequence of or in any way involving the following:

    1. The litigation styled *Wayman Tripp and Sven Mossberg v. IndyMac Bancorp, Inc., Michael W. Perry, and Scott Keyes* initiated 12 March 2007, in the United States District Court for the Central District of California under the caption *Claude A. Reese v. IndyMac Financial, Inc., Richard A. Wohl, and Scott Keyes,* Case No. 2:07-CV-1635-GW-VBK (the "Tripp Litigation"); or

    2. Any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions underlying or alleged in the Tripp Litigation.

regardless of any legal theory upon which such Claim is predicated.

All other terms and conditions remain unchanged.  (Endorsement to the 2008-2009 "Lloyds Renewal Policy.")

    85.    Each of the Insurance Carrier Defendants contends that the language alleged in paragraph 84 above, together with various prior litigation exclusions and prior notice exclusions in one or more of the D&O Policies, have the effect of excluding all coverage for the Underlying Claims in the Second Tower of the D&O Policies.  The Insurance Carrier

1 | Defendants contend that all of the Underlying Claims arise out of "interrelated wrongful acts"

2 | with the Tripp Litigation such that all of the Underlying Claims should be assigned to the First

3 | Tower, the 2007-2008 policy year, of the D&O Policies and should have no coverage under the

4 | Second Tower of the D&O Policies.  Indeed, some of the Insurance Carrier Defendants go so

5 | far as to contend that matters only scarcely related to the Tripp Litigation are excluded from

6 | coverage under the Second Tower even if they do not arise out of "interrelated wrongful acts"

7 | so as to be assigned to the First Tower along with the Tripp Litigation.

8 |        86.     In sum, the Insurance Carrier Defendants argue that there is only an $80 million

9 | face amount of insurance coverage available in the First Tower to respond to all of the

10 | Underlying Claims and that some of the Underlying Claims fall into a "crack" between the First

11 | Tower and Second Tower and have no insurance coverage at all.  Astoundingly, the Insurance

12 | Carrier Defendants make these arguments even though none of the D&O Policies contains a

13 | "prior acts" exclusion and even though the Insurance Carrier Defendants are aware of court

14 | decisions which have rejected the very arguments upon which they rely.  The Insurance

15 | Carrier Defendants have advanced their contentions without a reasonable basis for doing so

16 | and in dereliction of their duties toward IndyMac MBS and the other insureds.

17 |        87.     The Insurance Carrier Defendants are paying defense fees and costs for one or

18 | more of the Individual Insured Defendants.  IndyMac MBS is informed and believes the

19 | Insurance Carrier Defendants are also paying defense fees and costs for the Underlying

20 | Claims far in excess of what is reasonable and what is covered by the D&O Policies, including

21 | hourly rates of as high as $800 per hour.  IndyMac MBS is also informed and believes that the

22 | Insurance Carrier Defendants are paying for the defense of claims against the Individual

23 | Insured Defendants which can be proven, if at all, only by establishing intentional misconduct

24 | for which insurance coverage is prohibited under Section 533 of the California Insurance Code.

25 | Such payments impair the coverage potentially available to cover claims against and loss

26 | incurred by IndyMac MBS and other insureds.

27 |        88.     IndyMac MBS is a defendant in the MBS Litigation.  On or about October 28,

28 | 2010, IndyMac MBS tendered the MBS Litigation against it for defense and indemnity to each

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1    of the Insurance Carrier Defendants. A true and correct copy of that tender letter is attached

2    hereto as **Exhibit FF**. As of the date of the filing of this complaint, the Insurance Carrier

3    Defendants have neither admitted nor denied coverage of the MBS Litigation.

4        89.    IndyMac MBS is a defendant in the FHLB Chicago Litigation and the FHLB

5    Indianapolis Litigation. On or about February 17, 2011, IndyMac MBS tendered the FHLB

6    Litigations against it for defense and indemnity to each of the Insurance Carrier Defendants. A

7    true and correct copy of that tender letter is attached hereto as **Exhibit GG**. As of the date of

8    the filing of this complaint,  the Insurance Carrier Defendants have neither admitted nor denied

9    coverage of the FHLB Litigations.

10        90.    IndyMac MBS contends that its defense and indemnity in the MBS litigation and

11    the FHLB Litigations may be covered under the Side C coverage available in the first four

12    policies of the First Tower of the D&O Policies.  However, IndyMac MBS acknowledges that all

13    of the Underlying Claims, other than the claim against IndyMac MBS, potentially implicate the

14    Side A coverage available for the Individual Insured Defendants and/or the Side B coverage

15    which the Trustee contends is available to the Trustee. IndyMac MBS further acknowledges

16    that Side A and Side B coverage are entitled to priority of payment in certain circumstances

17    over Side C coverage.  Accordingly, the coverage, if any, of each of the Underlying Claims

18    other than the claims asserted against IndyMac MBS in the MBS Litigation and the FHLB

19    Litigations must be determined, and the policy year to which each such Underlying Claim is

20    assigned—whether the First Tower or Second Tower—must also be determined in order to

21    determine the extent of any coverage that is available for IndyMac MBS.  In addition, the

22    amount of any improper payment of defense costs under Side A must be ascertained in order

23    to determine the amount of potential coverage available for IndyMac MBS.  Accordingly, as set

24    forth below, IndyMac MBS seeks declaratory relief as to each of the Underlying Claims.

25        91.    IndyMac MBS is informed and believes that the Individual Insured Defendants

26    named in each of the Underlying Claims contend that some portion or all of the Underlying

27    Claims asserted against them is properly assigned to the Second Tower.  IndyMac MBS is

28    informed and believes that the Individual Insured Defendants named in the Trustee's Action

402739_3.DOC

1   and the Trustee contend that the entirety of the Trustee's claims is assigned to the Second

2   Tower.  IndyMac MBS is also informed and believes that defendants Koon, Shellem, Van

3   Dellen, and Rothman assert that the FDIC-R's claim in the Van Dellen Litigation should be

4   assigned entirely to the Second Tower.  IndyMac MBS is also informed and believes that the

5   Trustee contends that its alleged indemnity obligations, if any, to the Individual Insured

6   Defendants are covered under the Side B coverage of either the First Tower, the Second

7   Tower, or both.  IndyMac MBS is informed and believes that each of the Insurance Carrier

8   Defendants denies each of these allegations and contends that none of the Underlying Claims

9   implicate the Second Tower.

10        92.    The D&O Policies are not "duty to defend" insurance policies.  The Insurance

11  Carrier Defendants noted that it was "the duty of the insureds and not [the insurers] to defend

12  any claim."  A true and correct copy of a letter from counsel representing defendant XL dated

13  August 6, 2008 describing this position is attached hereto as **Exhibit HH**.  Instead, the D&O

14  Policies merely provide for the reimbursement of "Loss" which includes defense costs to the

15  extent that those costs arise out of covered "Claims."  Accordingly, the Insurance Carrier

16  Defendants specifically reserved their rights with respect to defense costs noting that their

17  payment of defense costs simply constituted an advancement of costs which was subject to an

18  "obligation to repay in event of determination of no coverage under the Policy. . . ."  A true and

19  correct copy of correspondence of September 23, 2008 from counsel representing Lloyds

20  outlining the insurance carriers' conditions regarding the advancement of defense costs is

21  attached hereto as **Exhibit II**.  IndyMac MBS is informed and believes that the Insurance

22  Carrier Defendants have advanced substantial uncovered defense costs and fees to the

23  Individual Insured Defendants.  The Insurance Carrier Defendants are contending that such

24  advancements reduce the limits available to pay other claims under the D&O Policies,

25  including claims under the Side C coverage of the First Tower.  IndyMac MBS disputes these

26  contentions.  The amount of any defense costs advanced for uncovered claims and/or for

27  unreasonable defense costs under the Side A coverage must be ascertained in order to

28  determine the amount of potential coverage available for IndyMac MBS.  Accordingly, as set

402739_3.DOC

1    forth below, IndyMac MBS seeks declaratory relief as to whether the Insurance Carrier

2    Defendants have advanced uncovered defense costs and fees.

## CAUSES OF ACTION

### Count One – The Tripp Litigation

5        93.    Plaintiff adopts and incorporates by reference paragraphs 1 through 92,

6    inclusive, above as if fully set forth herein.

7        94.    The Tripp Litigation implicates the D&O Policies only by virtue of its naming as

8    defendants some of the Individual Insured Defendants.  To the extent the plaintiffs in the Tripp

9    Action are required to prove, or do prove, intentional misconduct in order to establish their

10   claims against one or more of the Individual Insured Defendants, the plaintiffs in the Tripp

11   Litigation may establish that those claims do not implicate the D&O Policies because

12   intentional misconduct cannot be insured under Section 533 of the California Insurance Code.

13       95.    The Tripp Litigation was first asserted during the 2007-2008 policy year and the

14   claim was both made and reported in that policy year – the First Tower of the D&O Policies.

15       WHEREFORE, Plaintiff respectfully seeks a declaration that:

16       1.    The Individual Insured Defendants' claims for loss resulting from the Tripp

17   Litigation are not covered under any of the D&O Policies.

18       2.    The sums spent by the Insurance Carrier Defendants to defend the Tripp

19   Litigation are not covered by the D&O Policies and do not reduce the limits payable under

20   those policies.

21       3.    For any other relief that the Court deems just and equitable.

### Count Two – The Daniels Litigation

23       96.    Plaintiff adopts and incorporates by reference paragraphs 1 through 95,

24   inclusive, above as if fully set forth herein.

25       97.    The Insurance Carrier Defendants contend that the Daniels Litigation is properly

26   assigned to the First Tower.

27       98.    The Individual Insured Defendants contend that some or all of the claims

28   asserted in the Daniels Litigation are properly assigned to the Second Tower.

402739_3.DOC

**FIRST AMENDED COMPLAINT**

99.    IndyMac MBS contends that the Daniels Litigation is not covered under any of the D&O Policies.  Proof of the claims against the Individual Insured Defendants would require proof of intentional misconduct such that coverage is precluded under Section 533 of the California Insurance Code.

WHEREFORE, plaintiff IndyMac MBS respectfully seeks a declaration that:

1.    The Individual Insured Defendants' claims for loss resulting from the Daniels Litigation is not covered under any of the D&O Policies.  Alternatively, if the Individual Insured Defendants' claims for loss resulting from the Daniels Litigation are covered, a declaration as to whether they are covered under the First Tower or the Second Tower.

2.    The sums paid by the Insurance Carrier Defendants on account of the Daniels Litigation do not reduce the limits available to respond to other of the Underlying Claims under any of the D&O Policies.

3.    For any other relief that the Court deems just and equitable.

### Count Three – Bancorp's Bankruptcy Trustee's Claim

100.    Plaintiff adopts and incorporates by reference paragraphs 1 through 99, inclusive, above as if fully set forth herein.

101.    The Insurance Carrier Defendants contend that the Trustee Litigation is properly assigned to the First Tower.

102.    The Individual Insured Defendants and the Trustee contend that the Trustee Litigation is properly assigned to the Second Tower.

103.    IndyMac MBS contends that the Trustee Litigation is not covered under any of the D&O Policies.  Proof of the claims in the Trustee Litigation would require proof of intentional misconduct such that coverage is precluded under Section 533 of the California Insurance Code.

WHEREFORE, Plaintiff respectfully seeks a declaration that:

1.    The Individual Insured Defendants' claims for loss resulting from the Trustee Litigation are not covered under any of the D&O Policies.  Alternatively, if the Individual

402739_3.DOC

1 Insured Defendants' claims for the loss resulting from the Trustee Litigation are covered, a

2 declaration as to whether they are covered under the First Tower or the Second Tower.

3     2.    The sums paid by the Insurance Carrier Defendants on account of the Trustee

4 Litigation do not reduce the limits available to respond to other of the Underlying Claims under

5 any of the D&O Policies.

6     3.    For any other relief that the Court deems just and equitable.

7                    **Count Four – MBIA Litigation**

8     104.    Plaintiff adopts and incorporates by reference paragraphs 1 through 103,

9 inclusive, above as if fully set forth herein.

10     105.    The Insurance Carrier Defendants contend that the MBIA Litigation is properly

11 assigned to the First Tower.

12     106.    The Individual Insured Defendants contend that some or all of the claims

13 asserted in the MBIA Litigation are properly assigned to the Second Tower.

14     107.    IndyMac MBS contends that the MBIA Litigation is not covered under any of the

15 D&O Policies.  Proof of the claims against the Individual Insured Defendants would require

16 proof of intentional misconduct such that coverage is precluded under Section 533 of the

17 California Insurance Code.

18     WHEREFORE, Plaintiff respectfully seeks a declaration that:

19     1.    The Individual Insured Defendants' claims for loss resulting from the MBIA

20 Litigation are not covered under any of the D&O Policies.  Alternatively, if the Individual

21 Insured Defendants' claims for loss resulting from the MBIA Litigation are covered, a

22 declaration as to whether they are covered under the First Tower or the Second Tower.

23     2.    The sums paid by the Insurance Carrier Defendants on account of the MBIA

24 Litigation do not reduce the limits available to respond to other of the Underlying Claims under

25 any of the D&O Policies.

26     3.    For any other relief that the Court deems just and equitable.

27                 **Count Five – Assured Guaranty Litigation**

28     108.    Plaintiff adopts and incorporates by reference paragraphs 1 through 107,

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1  inclusive, above as if fully set forth herein.

2      109.   The Insurance Carrier Defendants contend that the Assured Guaranty Litigation

3  is properly assigned to the First Tower.

4      110.   The Individual Insured Defendants contend that some or all of the claims

5  asserted in the Assured Guaranty Litigation are properly assigned to the Second Tower.

6      111.   IndyMac MBS contends that the Assured Guaranty Litigation is not covered

7  under any of the D&O Policies.  Proof of the claims against the Individual Insured Defendants

8  would require proof of intentional misconduct such that coverage is precluded under Section

9  533 of the California Insurance Code.

10      WHEREFORE, Plaintiff respectfully seeks a declaration that:

11      1.   The Individual Insured Defendants' claims for loss resulting from the Assured

12  Guaranty Litigation are not covered under any of the D&O Policies.  Alternatively, if the

13  Individual Insured Defendants' claims for loss resulting from the Assured Guaranty Litigation

14  are covered, a declaration as to whether they are covered under the First Tower or the Second

15  Tower.

16      2.   The sums paid by the Insurance Carrier Defendants on account of the Assured

17  Guaranty Litigation do not reduce the limits available to respond to other of the Underlying

18  Claims under any of the D&O Policies.

19      3.   For any other relief that the Court deems just and equitable.

20                      **Count Six – The Van Dellen Litigation**

21      112.   Plaintiff adopts and incorporates by reference paragraphs 1 through 111,

22  inclusive, above as if fully set forth herein.

23      113.   Plaintiff is informed and believes that the Insurance Carrier Defendants contend

24  that the Van Dellen Litigation is properly assigned to the First Tower.  Plaintiff is informed and

25  believes that defendants Koon, Shellem, Van Dellen, and Rothman dispute this contention and

26  contend that the Van Dellen Litigation is appropriately assigned to the Second Tower.  Plaintiff

27  IndyMac MBS contends that the Van Dellen Litigation is properly assigned to the Second

28  Tower and is in fact covered under the Second Tower of D&O Policies.  Therefore, payment

1  for loss resulting from the Van Dellen Action does not exhaust the limits of the D&O Policies in

2  the First Tower, to which the MBS Litigation is assigned.

3      WHEREFORE, Plaintiff respectfully seeks a declaration that:

4      1.    The claims for loss resulting from the Van Dellen Litigation are properly assigned

5  to the Second Tower of D&O Policies.

6      2.    The Van Dellen Litigation is covered under the Second Tower of the D&O

7  Policies.

8      3.    For any other relief that the Court deems just and equitable.

9              **Count Seven – FDIC-R Residential Lending Claim**

10     114.   Plaintiff adopts and incorporates by reference paragraphs 1 through 113,

11 inclusive, above as if fully set forth herein.

12     115.   Plaintiff is informed and believes that the Insurance Carrier Defendants contend

13 that the FDIC-R Residential Lending Claim is properly assigned to the First Tower.

14     WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

15     1.    Whether the claims for loss resulting from the FDIC-R Residential Lending Claim

16 are covered under the D&O Policies.

17     2.    For any covered loss, a declaration that the claims for loss resulting from the

18 FDIC-R Residential Lending Claim belong in the First Tower or the Second Tower of the D&O

19 Policies.

20     3.    For any other relief that the Court deems just and equitable.

21              **Count Eight – MBS Litigation**

22     116.   Plaintiff adopts and incorporates by reference paragraphs 1 through 115,

23 inclusive, above as if fully set forth herein.

24     117.   The claims asserted against plaintiff in the MBS Litigation have been tendered by

25 plaintiff under the D&O Policies and any coverage under the D&O Policies is appropriately

26 assigned to the First Tower because the claims arise out of "interrelated wrongful acts" with the

27 Tripp Litigation.

28     118.   The Insurance Carrier Defendants have reimbursed the defense costs of

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1  Individual Insured Defendants who are defendants in the MBS Litigation, but have not

2  reimbursed IndyMac MBS. IndyMac MBS contends that its defense costs and any liability in

3  the MBS Litigation may be covered under the Side C coverage of the First Tower. The

4  Insurance Carrier Defendants have not communicated a position.

5      WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

6      1.    Whether Loss incurred by IndyMac MBS on account of Claims arising from the

7  MBS Litigation is covered under the D&O Policies, and also whether IndyMac MBS is entitled

8  to reimbursement of its defense costs and indemnity of any settlement or judgment in the MBS

9  Litigation

10     2.    That any covered Loss resulting from the MBS Litigation is properly assigned to

11  the First Tower of the D&O Policies.

12     3.    For any other relief that the Court deems just and equitable.

13                **Count Nine – FHLB Chicago Litigation**

14     119.   Plaintiff adopts and incorporates by reference paragraphs 1 through 118,

15  inclusive, above as if fully set forth herein.

16     120.   The claims asserted against plaintiff in the FHLB Chicago Litigation have been

17  tendered by plaintiff under the D&O Policies and any coverage under the D&O Policies is

18  appropriately assigned to the First Tower because the claims arise out of "interrelated wrongful

19  acts" with the Tripp Litigation.

20     121.   IndyMac MBS contends that its defense costs and any liability in the FHLB

21  Chicago Litigation may be covered under the Side C coverage of the First Tower. The

22  Insurance Carrier Defendants have not communicated a position.

23     WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

24     1.    Whether Loss incurred by IndyMac MBS on account of Claims arising from the

25  FHLB Chicago Litigation is covered under the D&O Policies, and also whether IndyMac MBS is

26  entitled to reimbursement of its defense costs and indemnity of any settlement or judgment in

27  the FHLB Chicago Litigation.

28     2.    That any covered Loss resulting from the FHLB Chicago Litigation is properly

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1  assigned to the First Tower of the D&O Policies.

2      3.      For any other relief that the Court deems just and equitable.

3              **Count Ten – FHLB Indianapolis Litigation**

4      122.    Plaintiff adopts and incorporates by reference paragraphs 1 through 121,

5  inclusive, above as if fully set forth herein.

6      123.    The claims asserted against plaintiff in the FHLB Indianapolis Litigation have

7  been tendered by plaintiff under the D&O Policies and any coverage under the D&O Policies is

8  appropriately assigned to the First Tower because the claims arise out of "interrelated wrongful

9  acts" with the Tripp Litigation.

10     124.    IndyMac MBS contends that its defense costs and any liability in the FHLB

11  Indianapolis Litigation may be covered under the Side C coverage of the First Tower.  The

12  Insurance Carrier Defendants have not communicated a position.

13         WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

14     1.      Whether Loss incurred by IndyMac MBS on account of Claims arising from the

15  FHLB Indianapolis Litigation is covered under the D&O Policies, and also whether IndyMac

16  MBS is entitled to reimbursement of its defense costs and indemnity of any settlement or

17  judgment in the FHLB Indianapolis Litigation.

18     2.      That any covered Loss resulting from the FHLB Indianapolis Litigation is properly

19  assigned to the First Tower of the D&O Policies

20     3.      For any other relief that the Court deems just and equitable.

21             **Count Eleven – The SEC Abernathy Litigation**

22     125.    Plaintiff adopts and incorporates by reference paragraphs 1 through 124,

23  inclusive, above as if fully set forth herein.

24     126.    The SEC Abernathy Litigation implicates the D&O Policies by virtue of its naming

25  as defendant one of the Individual Insured Defendants.

26     127.    Plaintiff is informed and believes the Insurance Carrier Defendants contend that

27  the SEC Abernathy Litigation is properly assigned to the First Tower.

28         WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

402739_3.DOC
**FIRST AMENDED COMPLAINT**

1       1.     Whether Defendant Abernathy's claim for loss resulting from the SEC Abernathy

2  Litigation is covered under any of the D&O Policies.

3       2.     If Defendant Abernathy's claim for loss resulting from the SEC Abernathy

4  Litigation is covered, a declaration as to whether it is covered under the First Tower or the

5  Second Tower.

6       3.     If Defendant Abernathy's claim for loss resulting from the SEC Abernathy

7  Litigation is not covered under any of the D&O Policies, that the sums paid by the Insurance

8  Carrier Defendants on account of the SEC Abernathy Litigation do not reduce the limits

9  available to respond to other of the Underlying Claims under any of the D&O Policies.

10       4.     For any other relief that the Court deems just and equitable.

11                **Count Twelve – The SEC Perry Litigation**

12       128.   Plaintiff adopts and incorporates by reference paragraphs 1 through 127,

13  inclusive, above as if fully set forth herein.

14       129.   The SEC Perry Litigation implicates the D&O Policies by virtue of its naming as

15  defendants two of the Individual Insured Defendants.

16       130.   Plaintiff is informed and believes the Insurance Carrier Defendants contend that

17  the SEC Perry Litigation is properly assigned to the First Tower.

18       WHEREFORE, Plaintiff respectfully seeks a declaration as follows:

19       1.     Whether Defendants Perry's and Keys' claims for loss resulting from the SEC

20  Perry Litigation are covered under any of the D&O Policies.

21       2.     If Defendants Perry's and Keys' claims for loss resulting from the SEC Perry

22  Litigation are covered, a declaration as to whether they are covered under the First Tower or

23  the Second Tower.

24       3.     If Defendants Perry's and Keys' claims for loss resulting from the SEC Perry

25  Litigation are not covered under any of the D&O Policies, that the sums paid by the Insurance

26  Carrier Defendants on account of the SEC Perry Litigation do not reduce the limits available to

27  respond to other of the Underlying Claims under any of the D&O Policies.

28       4.     For any other relief that the Court deems just and equitable.

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1

## Count Thirteen - Assignment to Appropriate Tower

2    131.    Plaintiff adopts and incorporates by reference paragraphs 1 through 130,

3  inclusive, above as if fully set forth herein.

4    132.    As specified above, Individual Insured Defendants, Insurance Carrier

5  Defendants, the Trustee, various claimants asserting Underlying Claims against the Individual

6  Insured Defendants, and Plaintiff IndyMac MBS have taken different positions regarding

7  whether coverage for losses incurred by insureds under the D&O Policies with respect to

8  various Underlying Claims should be assigned to the First Tower or the Second Tower.

9    133.    This issue may implicate the amount of coverage available to IndyMac MBS

10  under the First Tower for its losses with respect to the MBS Litigation, the FHLB Chicago

11  Litigation, the FHLB Indianapolis Litigation, and any other covered claims that may arise in the

12  future.

13    WHEREFORE, Plaintiff respectfully seeks a declaration:

14    1.    Determining whether claims for losses incurred with respect to each Underlying

15  Claim should be assigned to the First Tower or the Second Tower.

16    2.    For any other relief that the Court deems just and equitable.

17

## Count Fourteen - Uncovered Defense Costs

18    134.    Plaintiff adopts and incorporates by reference paragraphs 1 through 133,

19  inclusive, above as if fully set forth herein.

20    135.    Plaintiff is informed and believes that Insurance Carrier Defendants have

21  advanced attorneys fees and defense costs to Individual Insured Defendants (a) with respect

22  to Underlying Claims that are not subject to coverage under the D&O Policies; and (b) even if

23  covered, are excessive and unreasonable.

24    WHEREFORE, Plaintiff respectfully seeks a declaration that:

25    1.    Certain advances by Insurance Carrier Defendants of attorneys fees and defense

26  costs under the D&O Policies were on account of losses not covered by those the D&O

27  Policies or for amounts that are excessive and unreasonable.

28

402739_3.DOC

**FIRST AMENDED COMPLAINT**

1     2.     Such uncovered or excessive and unreasonable amounts do not exhaust any

2 limits available to cover losses incurred by insureds under the D&O Policies.

3     3.     For any other relief that the Court deems just and equitable.

4

5     Respectfully submitted.

6

7 DATED: March 30, 2011            NOSSAMAN LLP

8                         Allan H. Ickowitz
Thomas D. Long

9                         Scott N. Yamaguchi
David Graeler

10

11                         By: _____

12                             Thomas D. Long
Attorneys for Plaintiff IndyMac MBS, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28