# EXHIBIT B

**AMENDED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-02600-RGK<br>(BK 2:08-bk-21752-BB/ADV 2:11-ap-01443-BB);<br>CV 11-02605-RGK<br>(BK 2:08-bk-21752-BB/ADV 2:11-ap-01443-BB);<br>CV 11-02950-RGK;<br>(BK 2:08-bk-21752-BB/ADV 2:11-ap-01820-BB)<br>CV 11-02998-RGK<br>(BK 2:08-bk-21752-BB/ADV 2:11-ap-01820-BB) | Date | May 20, 2011 |
| Title | **IN RE INDYMAC BANCORP, INC.** | | |

| | |
|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Insurers' Motions to Withdraw References**

## I. INTRODUCTION

The four motions addressed in this order arise from two adversary proceedings that are pending in the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court"). These proceedings are part of a bankruptcy case filed by Indymac Bancorp, Inc. ("Bancorp") under Title 11, Chapter 7 of the United States Code. Both adversary proceedings seek declaratory judgment regarding coverage under two sets of insurance policies, and both proceedings were automatically referred to the Bankruptcy Court by this Court pursuant to Local Bankruptcy Rule 5011-1. The present motions seek withdrawal of the references for both proceedings, so that they may be heard in this Court instead of the Bankruptcy Court. As explained below, all four of the present motions are **GRANTED**.

## II. FACTUAL BACKGROUND

### A. The Insurance Policies

The first set of insurance policies ("ABC Policies") at issue in the various declaratory judgment actions provides coverage for the following losses: (1) losses resulting from claims against directors and officers of Bancorp for individual acts, also known as "Side A" coverage; (2) losses resulting from

Bancorp's indemnification of its officers and directors, also known as "Side B" coverage; and (3) losses sustained by Bancorp as a result of securities law violations, also known as "Side C" coverage. The ABC Policies cover two policy years, running from March 1, 2007 to March 1, 2008 ("07-08 Policy Year") and March 1, 2008 to April 1, 2009 ("08-09 Policy Year"). In both policy years, the ABC Policies were structured around a primary policy with a face value of $10 million, supplemented by three layers of excess coverage at $10 million per layer, for total coverage of $40 million per policy year. In the 07-08 Policy Year, the primary policy was issued by Certain Underwriters at Lloyd's, London and Lexington Insurance Company, Subscribing to Policy No. QA006807. The excess coverage layers for the 07-08 Policy Year were issued by Zurich American Insurance Company, Federal Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. In the 08-09 Policy Year, the primary policy was issued by Certain Underwriters at Lloyd's, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA001608. The excess coverage layers for the 08-09 Policy Year were issued by Twin City Fire Insurance Company, Continental Casualty Company, and Zurich American Insurance Company. The four insurers that issued that ABC Policies for the 08-09 Policy Year ("ABC Insurers") jointly filed motions to withdraw the reference in each of the two pending adversary proceedings.

The second set of insurance policies ("A-Side Policies") provides "Side A" coverage only, for losses resulting from claims against Bancorp's directors and officers. Like the ABC Policies, the A-Side Policies each have a face value of $10 million, and they are structured around a primary policy with three layers of excess coverage. They span the same two policy years, but in the case of the A-Side Policies the same insurers provided coverage for both years. The primary provider for the A-Side Policies was XL Specialty Insurance Company, and the excess coverage providers were Arch Insurance Company, Ace American Insurance Company, and Axis Reinsurance Company. The four insurers that issued the A-Side Policies ("A-Side Insurers"), like the ABC Insurers, jointly filed motions to withdraw in each of the two pending adversary proceedings.

**B. <u>The Coverage Actions</u>**

The first of the adversary proceedings mentioned above was filed by Alfred H. Siegel ("Siegel"), as Chapter 7 trustee for the bankruptcy estate ("Estate") of Bancorp, in the Bankruptcy Court on February 2, 2011. In this action ("Trustee's Coverage Action"), Siegel seeks a declaration that the ABC Policies and the A-Side Policies provide coverage for a possible damage award that Siegel is pursuing in a separate, underlying action. That underlying action ("Trustee's Underlying Action") is also pending in the Bankruptcy Court, and involves claims against some of Bancorp's former directors and officers for breach of fiduciary duty and corporate waste.

The second adversary proceeding was filed by IndyMac MBS, Inc. ("MBS"), a former subsidiary of Bancorp, in Los Angeles County Superior Court on February 23, 2011. In this action ("MBS Coverage Action"), MBS seeks declarations regarding coverage under the ABC Policies and the A-Side Policies for twelve underlying actions that are pending against MBS and others in various courts. One of these twelve actions is the Trustee's Underlying Action, mentioned above. By obtaining declaratory judgment on these matters, MBS evidently hopes to secure coverage for itself, but not the other defendants, in the underlying actions, thereby maximizing the amount of money available to cover its own liability. Defendants in the MBS Coverage Action include the A-Side Insurers and the ABC Insurers, as well as some former directors and officers of Bancorp and/or MBS who claim benefits under the insurance policies ("D&O Claimants"). On March 16, 2011, one of the D&O Claimants removed the MBS Coverage Action to federal court where it was automatically referred to the Bankruptcy Court.

A third action related to the Trustee's Coverage Action and the MBS Coverage Action was filed by the A-Side Insurers in this Court, and is currently pending before District Judge George H. King. In this action ("A-Side Coverage Action"), the A-Side Insurers seek declarations regarding coverage under

the A-Side Policies only, for six underlying actions. All six of the underlying actions are also at issue in the MBS Coverage Action, and one of the six is the Trustee's Underlying Action. Although none of the present motions arise directly from the A-Side Coverage Action, the parties refer to it in their arguments because it overlaps substantially with the other coverage actions.

In summary, the four motions presently before the Court ("Motions") were filed by the Insurers to withdraw the references in the Trustee's Coverage Action and the MBS Coverage Action, so that they could be joined with the A-Side Coverage Action in this Court. The Motions are opposed by MBS, Siegel, and the D&O Claimants (collectively, "Opponents"). The Opponents argue for all of the coverage actions to be consolidated in the Bankruptcy Court.

## III. JUDICIAL STANDARD

A district court may withdraw any case or proceeding referred to a bankruptcy judge in the same district "for cause shown." 28 U.S.C. § 157(d). In determining whether cause exists, a court "should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bd. of Teamsters*, 124 F.3d 999, 1008-09 (9th Cir. 1997). Such "other related factors" may include (1) whether the claims at issue in the proceeding are "core" as defined by 28 U.S.C. § 157(b); (2) whether the claims are legal or equitable; and (3) whether the claims are triable by a jury. *See Daewoo Motor America, Inc. v. Gulf Ins. Co.*, 302 B.R. 308, 310 (C.D. Cal. 2003).

## IV. DISCUSSION

The A-Side Insurers and the ABC Insurers argue that the relevant factors weigh in favor of withdrawal. The Court agrees, so the Motions are **GRANTED**.

### A. The Coverage Actions are Not Core Proceedings

"A district court considering whether to withdraw the reference should first evaluate whether the [underlying proceeding] is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993).

The distinction between core proceedings and non-core proceedings arises from the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). In that case, the Court determined that Congress did not have the power to grant jurisdiction to the bankruptcy courts over proceedings involving rights "created by state law" and "independent of and antecedent to" the bankruptcy petition because the bankruptcy courts are organized under Article I of the Constitution, rather than Article III. Following *Marathon*, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("Act"), which defined and distinguished core and non-core proceedings. *See* 28 U.S.C. § 157. According to the Act, a core proceeding in bankruptcy is one that invokes a substantive right provided by the bankruptcy laws or that, by its nature, could arise only in the context of a bankruptcy case. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000). Under the Act, bankruptcy judges may hear and decide core proceedings. *See* 28 U.S.C. § 157(b)(1). In non-core proceedings, however, bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts for *de novo* review. *See* 28 U.S.C. § 157(c)(1). Thus, the separation of "core" and "non-core" proceedings creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction, ensuring that bankruptcy judges do not exceed the limitations imposed by the Constitution. *Gruntz*, 202 F.3d at 1081.

Here, the Insurers contend that the Trustee's Coverage Action and the MBS Coverage Action are non-core proceedings because they are based on state law and do not rely on the bankruptcy laws for their existence. For the following reasons, the Court agrees.

1. *The District Court May Determine Whether a Proceeding is Core or Not Even If the Bankruptcy Court Has Not Considered the Question*

Siegel attempts to prevent the Court from reaching the question of whether the Trustee's Coverage Action and the MBS Coverage Action are core or non-core. He incorrectly argues that this Court cannot make the core/non-core determination unless the Bankruptcy Court has reached a decision on the matter first. In support of this argument, Siegel quotes 28 U.S.C. § 157(b)(3), which says that "[t]he bankruptcy judge shall determine . . . whether a proceeding is a core proceeding." However, this rule does not apply to the present situation, where the Court is deciding whether proceedings should be heard in the bankruptcy court at all. *See* 28 U.S.C. § 157(a) ("Each district court *may* provide that [bankruptcy cases] shall be referred to the bankruptcy judges for the district.") (emphasis added). Siegel provides additional support for his argument with a quote from *In re International Nutronics, Inc.*, which says that the bankruptcy court should determine "in the first instance" whether a proceeding is core or non-core. 28 F.3d 965, 969 (9th Cir. 1994). However, the *Nutronics* court makes this remark assuming that the proceeding is already being heard in the bankruptcy court. A few lines later, the court notes an alternative: "the reference can be withdrawn when the claim is made, and the matter decided from the beginning by the district court." *Id.* If the matter is decided from the beginning by the district court, then the bankruptcy court will have no opportunity to consider whether the proceeding is core or non-core. It follows that the district court may choose to determine the core/non-core issue before the bankruptcy court renders an opinion. In fact, district courts do this routinely. *See, e.g., In re Daewoo Motor America, Inc.*, 302 B.R. 308, 311 (C.D. Cal. 2003). Of course, a district court may choose to defer or deny a motion to withdraw pending a determination of the core/non-core issue by the bankruptcy court, but Siegel provides no compelling reason for the Court to do so in the present case. Accordingly, the Court finds it appropriate to consider whether the Trustee's Coverage Action and the MBS Coverage Action are core proceedings.

1. *The Trustee's Action is Not a Core Proceeding*

In the Trustee's Coverage Action, Siegel seeks a declaration that the A-Side Policies and the ABC Policies provide coverage for the breaches of fiduciary duty and corporate waste alleged in the Trustee's Underlying Action. This is not a core proceeding for several reasons. First, breach of fiduciary duty and corporate waste are claims based on state law rather than the bankruptcy laws. Second, state contract law will determine the outcome of the declaratory judgment claim. Finally, the allegations in the Trustee's Underlying Action indicate that the claims therein accrued prior to the filing of Bancorp's bankruptcy petition. This, the Trustee's Coverage Action involves rights created by state law that are independent of and antecedent to Bancorp's bankruptcy, so it is beyond the scope of the Article I bankruptcy power and properly categorized as a non-core proceeding.

Siegel incorrectly relies on *In re Harris*, 590 F.3d 730 (9th Cir. 2009), to argue that the Trustee's Coverage Action is a core proceeding. The plaintiff in *Harris* sued a bankruptcy trustee for allegedly breaching a settlement contract. Because the alleged breach occurred in the course of the trustee's official duty to administer the bankruptcy estate, the plaintiff's claim was one that, by its nature, could only arise in the context of a bankruptcy case. *Id.* at 740. Unlike *Harris*, the Trustee's Coverage Action does not arise from the bankruptcy laws. It is connected to the bankruptcy laws only insofar as judgment in favor of Siegel would enrich Bancorp's Estate. According to the Supreme Court's holding in *Marathon*, however, a state law claim brought merely to augment a bankruptcy estate is outside the core of the bankruptcy power. *See Marathon*, 458 U.S. 50, 71-72. Therefore, *Harris* does not support a finding that the Trustee's Coverage Action is a core proceeding.

Siegel also argues that the Trustee's Coverage Action is a core proceeding because it requires the Court to determine the nature and extent of the Estate's property interest in the insurance policies. For this proposition, Siegel cites *In re Kincaid*, 917 F.2d 1162 (9th Cir. 1990). However, Siegel ignores a crucial distinction that is described in that case. The *Kincaid* court is careful to distinguish between "*property of* the debtor" and "*property owed to* the debtor." *Id.* at 1165 (emphasis in original). Actions to determine property *of* a bankruptcy debtor's estate are within the core jurisdiction of the bankruptcy court, but actions regarding property *owed to* the estate are not. *Id.* The property *of* the estate in *Kincaid* was an investment account in the debtor's name, which held "a sum certain in which she [had] a present, vested interest." *Id.* The *Kincaid* court distinguished that case from others that involved property *owed to* an estate, like an action to recover damages for breach of a pre-bankruptcy contract, an action to recover pre-bankruptcy accounts receivable, an action to enforce a promissory note, or "an action to recover damages resulting from a breach of contract not yet adjudicated." *Id.* In the Trustee's Coverage Action, the property at issue is money that may be payable to the Estate under various insurance contracts, depending on the outcome of the Trustee's Underlying Action. This property is analogous to *Kincaid*'s examples of property *owed to* an estate, rather than property *of* an estate. Because the Trustee's Coverage Action does not deal with property *of* the Estate, Siegel's reliance on *Kincaid* is misplaced, and the Court remains convinced that the Trustee's Coverage Action is not a core proceeding.

2. *The MBS Coverage Action Is Not a Core Proceeding*

Neither MBS nor the D&O Claimants argue that the MBS Coverage Action is a core proceeding. Siegel argues that the MBS Coverage Action is core, but he relies on the same unpersuasive arguments that the Court rejected above. Therefore, the Court finds that the MBS Coverage Action, like the Trustee's Coverage Action, is a non-core proceeding.

The fact that both the Trustee's Coverage Action and the MBS Coverage Action are non-core proceedings weighs in favor of the present Motions.

**B. Judicial Efficiency Favors Withdrawal**

The parties disagree about which court should hear the coverage actions, but they agree that efficiency concerns strongly support the consolidation of the coverage actions in a single forum. The Insurers argue that adjudication in this Court would minimize the amount of duplicated effort and promote judicial efficiency. As explained below, the Court agrees.

In non-core proceedings, bankruptcy courts are prohibited from entering final judgments. 28 U.S.C. § 157(c)(1). After hearing such proceedings, a bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. If any party challenges these findings or conclusions, the district court reviews them de novo. *Id.* However, if a non-core proceeding is heard in the district court instead, final judgment can be entered directly. Here, the coverage actions are non-core matters, so "unnecessary costs could be avoided by a single proceeding in the district court." *Sec. Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). In other words, judicial efficiency favors the Motions.

Siegel contends that judicial efficiency favors determination of the coverage actions in the Bankruptcy Court despite the additional round of de novo review that may be necessary. He argues that, because the Trustee's Underlying Action is already pending in the Bankruptcy Court, that court is better situated to decide the coverage actions. However, Siegel neglects to mention the eleven other underlying actions that are also at issue in the coverage actions. He does not explain how the effort saved by the Bankruptcy Court due to its familiarity with one underlying action outweighs the cost of an additional level of review for each of the twelve underlying actions that are presently at issue. Accordingly, the

Court finds Siegel's argument unpersuasive.

**C. Delays and Costs to the Parties**

The same reasoning that supported the Court's finding with regard to judicial economy also supports a finding that delays and costs to the parties would be minimized by withdrawing the references in the coverage actions. As explained above, non-core proceedings that are heard in bankruptcy court may be subject to an additional level of de novo review. This creates more work for the courts, and it also creates more work for the parties, requiring the expenditure of additional time and money. Thus, the Court finds that the prospect of delays and costs to the parties weighs in favor of the Motions.

**D. Uniformity of Bankruptcy Administration**

Besides Siegel, none of the Opponents argues that withdrawing the references in the coverage actions would disrupt the uniformity of bankruptcy administration. Siegel's lone argument depends on the coverage actions being categorized as core proceedings, but the Court has already found that they are non-core. Because the coverage actions are non-core, they do not implicate the administrative duties of the Bankruptcy Court and the Court finds that the uniformity of bankruptcy administration will not be disrupted if the Motions are successful.

**E. Prevention of Forum Shopping**

The Opponents argue that the Insurers seek withdrawal of the references in the coverage actions because they are shopping for a favorable forum. In support of this argument, the Opponents point out that one of the A-Side Insurers filed a declaratory judgment action in state court, but later dismissed it and joined the other A-Side Insurers in the A-Side Coverage Action. The fact that one of the A-Side Insurers voluntarily dismissed a case that it brought individually in order to join a more comprehensive case with the other A-Side Insurers indicates nothing more than a desire to avoid duplicative litigation. This desire for efficiency also explains why the Insurers now seek withdrawal of the references in the coverage actions. Presumably, they want to avoid the unnecessary round of de novo review that might result from litigating non-core proceedings in the Bankruptcy Court. Although Siegel suggests that the promptness of the Insurers' Motions indicates that they are "scrambling to get away" from the Bankruptcy Court, the statute that authorizes the Motions plainly requires that they be "timely." 28 U.S.C. § 157(d). Indeed, any decisions made by the Bankruptcy Court before the references are withdrawn would have to be reviewed de novo, so leaving the coverage actions in that court simply increases the number of issues that might have to be decided twice before a final judgment is entered. In short, none of the behavior identified by the Opponents indicates that the Motions are an attempt to forum shop.

**F. Legal or Equitable Nature of Claims**

The parties do not address whether the claims at issue in the coverage action are legal or equitable, so the Court does not consider this factor.

**G. Whether the Claims Are Triable By A Jury**

The parties agree that the coverage actions are likely to be resolved at the summary judgment stage. Therefore, the Court need not consider whether the claims in the coverage actions are triable by a jury.

**V. CONCLUSION**

Case 2:11-cv-02600-RGK Document 41 Filed 05/20/11 Page 7 of 7 Page ID #384

Each of the relevant factors discussed above either favors withdrawal of the references in the coverage actions, or is neutral. Therefore, the Court **GRANTS** all of the Motions.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer slw